JOSEPH ERLINGER

*v.*

JOSEPH BONEAU.

1. STOCK RUNNING AT LARGE—*in Monroe, St. Clair and other counties—construction of the act of* 1867. By the provisions of the 8th and 10th sections of the act of 1867, entitled, "An Act to prevent domestic animals from running at large in the counties of Monroe, St. Clair and other counties," a majority of the legal votes cast for the adoption of the act, in any one of the counties named in the act, at an election to be held for that purpose, makes such act operative throughout the entire county so adopting it. But if a majority of the legal voters of such county, at such election, reject the act, and a majority of the legal voters of any one or more of the precincts of said county adopt it, such act goes into effect, and is a law of the precincts in such county so adopting it.

2. STATUTES—*titles of acts—construction of sec. 23, art. 3, of the constitution.* An act entitled, "An Act to prevent domestic animals from running at large, in the counties of Monroe, St. Clair and other counties," which embraces not only more than one county, and may be adopted or rejected by any or all of them, but also embraces the precincts of each county, and although rejected by a majority vote of the county, may be adopted by a majority vote of one or more of the precincts in such county, and become a law valid and operative, within the territorial limits of such precinct, yet, such precincts, being subdivisions of the territorial limits of the counties,

are included therein, and ancillary to the subject expressed in such title, and the act is not repugnant to the constitution in that regard.

3.  Nor will that portion of the act, which refers to and adopts the mode of proceeding prescribed in the general estray laws of the State relative to giving notice, and the time within which to reclaim the property, be construed as an amendment of the estray laws in that regard, but will be treated as the adopting of a reasonable and proper mode to carry the act into effect, and need not be embraced in the title of the act itself.

4.  SAME—*submission to a vote of the people.*  It is fairly within the scope of legislative power, to prescribe, as one of the conditions upon which the law in a given case shall come into operation or be defeated, that it shall depend upon a vote of the people of the locality to be affected by its provisions.

5.  STATUTORY RIGHTS—*proof thereof.*  Where a party seeks to justify an act, as being authorized by statute, it devolves upon him to show that he is within the conditions of the law which is claimed to be the warrant of his authority.

6.  IMPOUNDING STOCK—*in Monroe and other counties, under act of* 1867. So, where under the provisions of the act of 1867, entitled, "An act to prevent domestic animals from running at large in the counties of Monroe, St. Clair and other counties," a party who seeks to justify the taking up and impounding of stock under that law, must show that he is a householder.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

The opinion states the case.

Mr. NATHANIEL NILES and Mr. JAMES M. DILL, for the plaintiff in error.

Mr. WILLIAM WINKELMAN, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of replevin, commenced before a justice of the peace, of St. Clair county, by plaintiff in error, against defendant in error, for the recovery of sixteen head of hogs. A trial was had, resulting in favor of plaintiff below.  The

case was thereupon removed to the circuit court by appeal.
On a trial in that court, a jury having been waived by consent of the parties, the court found for the defendant, and
rendered a judgment for the return of the property. To
reverse that judgment, the record is brought to this court and
various errors are assigned.

It appears from the record in the case, that the hogs in controversy were taken up by defendant, under an act of the
legislature to prevent domestic animals from running at large.
(Sess. Laws, 1867, p. 97.) That both parties were residents
of French Village precinct, in St. Clair county. That the
fences surrounding the premises, on which the hogs were
found when taken up by defendant, were in bad condition,
and insufficient to turn stock. That the hogs were taken up
on Monday, the 29th of June, and notice or other steps were
not taken in reference to the disposition of the same until
Wednesday, July 1st, 1868, when plaintiff was notified of the
impounding of his hogs. It was admitted on the trial below,
that the law under which the hogs were seized had not been
ratified by a majority of the legal voters of St. Clair county.
But that at the November election, 1867, a majority of all the
votes cast in French Village precinct, were for "keeping
up stock."

The first section of the act referred to declares, that from
and after the first day of March, 1868, and for all time thereafter, it shall not be lawful for the owners of any domestic
animals of the species of horse, cattle, mule, ass, sheep, hog
and goat, to suffer the same to run at large in the county of
Monroe; and all such animals found running at large in said
county after that day, may be taken up by any householder
of the county, who is required to keep them safely, in his
stable, lot or inclosure, and provide them with a sufficiency
of proper food and water until taken away, according to the
provisions of this act.

The second section of the act makes it the duty of the person taking up such animal, within two days thereafter, to

notify the owner thereof, or the person from whom the animal has escaped, if a resident of the county and known to the person impounding such animal, either verbally or by written notice left at the usual abode of the owner, and if not known, or he is non-resident, then to give notice to the nearest justice of the peace of the county, of the kind and number of animals taken up, with a description thereof; and the justice of the peace is required forthwith to prepare and post three notices, describing the animals, the time and place when and where they were taken up.

The third section declares, that on the application of the owner, if made within ten days after receiving such notice, the property shall be delivered up, he paying the charges fixed by the section for keeping such stock.

The fourth section declares, that if the owner shall fail to appear within ten days after such notice and prove and take away his property, it shall be considered and dealt with under the laws of the State as an estray.

The sixth section declares, that if any person fails in taking up such animals to comply with the law, he shall forfeit all claim to compensation, and be liable to the owner for all damages sustained by reason of such negligence or failure to comply with the requirements of the law.

The eighth section declares, that the act shall not be in force until the same shall be ratified by a majority of the legal voters of the county. But it contains a proviso, "that this law shall, from and after the said first day of March, 1868, be in full force and effect in any of the election precincts of said county, where a majority of the legal votes shall be given for 'keeping up stock.'"

The tenth section provides for submitting the act to the voters of the county at any subsequent November election, and declares that if a majority vote for the same, it shall take effect and be in force from and after the first day of the next succeeding March, in the whole county, and in any precinct in the county where, at any submission of the question, a

7—51st ILL.

majority of the votes cast shall be, " For keeping up stock."

The eleventh section declares, that the provisions of the law shall apply to St. Clair and a number of other counties which are enumerated.    These are the several provisions of the act which are necessary in the consideration of this case.

It is urged that when the law was rejected by the majority of the votes cast at the election in the county, the law failed to become operative in any precinct in the county. Although awkwardly expressed in both the eighth and tenth sections, still there seems to be no doubt that the only fair and reasonable construction the language will bear is, that if a majority of the votes cast in the county had been in favor of keeping up stock, then the law would have been in force throughout the county, although in some of the precincts the majority might have been against the proposition, and that it should become operative in such precincts as voted for the proposition, notwithstanding the majority of the votes cast in the county were against it.    It was intended first, if the majority of the voters of the county were in favor of the law, that it should have force and effect in every part of its territory, but if a majority of the larger division were opposed, then the smaller divisions, as precincts, should have the right to avail themselves of its provisions if they desired, when a majority of the votes of the precinct should be so cast at a November election, when the question was properly submitted.    The precinct of French Village it is admitted so decided, and hence the law became operative, and of full force in that precinct.

It is also urged that the law is invalid because it is violative of the provisions of our constitution.    It is urged, that as the title of the law refers alone to counties and not to precincts, it is therefore repugnant to the 23d section of article 3 of that instrument.    That section declares that " no private or local law which may be passed by the general assembly, shall embrace more than one subject, and that shall be expressed in the title."    It is contended that as the title is "An Act to prevent domestic animals from running at large in the counties

of Monroe, St. Clair and other counties," it can not be held to apply to any smaller division than a county, unless in force throughout the county. What is the subject of the title? It is the prevention of domestic animals from running at large in certain localities. All of the provisions adopted in the act tending to produce that end, must necessarily be held not to be required to be expressed in the title, or otherwise the title would have to contain the same provisions as the act. This is not the construction contended for by any one, and for the reason that the constitution and all of its provisions must have a reasonable and practical operation. An examination of a law adopted by our general assembly, and such as no one will challenge, will show that every section contains a subject, but a minor subject ancillary to the main subject or object of the bill. The purpose of adopting a bill could never be effected if this were not the case. But each section must be germane to the primary object of the bill, which is by the constitution denominated as the subject of the bill. The object of this bill was to restrain stock from running at large in the territory embraced in the limits of St. Clair and other counties.

Inasmuch as various counties are embraced in the title to this act, the same question could be presented on the ground that each county was a subject, and being more than one, the law should be held unconstitutional. But it could hardly be said that the objection was even plausible. See *The City of Ottawa* v. *The People*, 48 Ill. 233. The moving cause was to restrain cattle from running at large in the various localities, and hence that was the subject; and the territory of these several counties is embraced in the subject of the bill, together with all reasonable and proper means for carrying the object into effect. And as this precinct is embraced within the territory, and is within the object expressed in the title, and being entirely germane to the scope of the act, we must hold that it is embraced in the subject named in the title and that the law is valid and binding.

This conclusion is fully sustained by the cases of *Belleville R. R. Co.* v. *Gregory*, 15 Ill. 20; *Firemen's Benevolent Association* v. *Lounsbury*, 21 Ill. 511; *O'Leary* v. *County of Cook*, 28 Ill. 534, and *Schuyler County* v. *R. I. & Alton R. R. Co.* 25 Ill. 181. In each of these cases this question was presented and passed upon by this court, and the reasoning of the court in their determination governs the case at bar.

It is also urged, that under the organic law the legislature have no power to make the validity of a law depend upon a vote of the people, and as this act declares that it shall not be binding until adopted by the vote of the several municipal divisions as therein specified, it does not possess the elements of a binding law. This question was maturely considered and fully discussed in *The People ex rel.* v. *Reynolds*, 5 Gilm. 1, and *The People ex rel. The South Park Commissioners* v. *Salomon, ante* p. 37, where the conclusion was announced that such a submission was fairly within the scope of the legislative power. We do not see any reason to review the grounds of the decisions there announced, or to depart from the conclusion there arrived at, and must hold that they govern this question.

It is insisted that the fourth section is an amendment of the general estray law of the State and is not embraced in the title of the law. We do not think the section will reasonably bear such a construction. It simply provides that if the owner fails for ten days after notice is given to claim his property, it shall be considered as estray and dealt with accordingly. This section only declares what the estray law had already provided. It, like that act, only treats animals running at large and the owner is not known, as estrays, and requires them to be posted under the general estray laws of the State. Again, it is a part of a reasonable and proper mode of proceeding to carry this law into effect, and by no means renders the act inoperative or void.

We now come to the last objection urged for the reversal of the judgment below. It is insisted that notwithstanding the

law may have been in force in French Village precinct, still as the evidence or admissions fail to show that defendant in error was a householder, the judgment should be reversed. By a reference to the first section of the law, it will be observed that it only impowers householders to take up and impound such stock. No power is conferred upon any other class of persons. Except householders, all others are powerless to take up such stock as they were before the passage of this act. And as defendant claims no right to the ownership or possession of property beyond what this statute confers, he should have shown that he was a householder and therefore possessed the power to perform the act. If he relies upon the statute as the warrant of his authority, he must show that he is such a person as it has authorized to perform the act. Having failed to prove the fact he has failed to justify the seizure of the property and the right to retain it, and the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*